```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF TENNESSEE
                     WESTERN DIVISION
```

CHARLES HARDY,

    Petitioner,

vs.                               No. 05-2532-Ml/An

BRUCE PEARSON, et al.,

    Respondents.

```
         ORDER DENYING PETITION UNDER 28 U.S.C. § 2241
         ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
                              AND
                NOTICE OF APPELLATE FILING FEE
```

Petitioner Charles Hardy, Bureau of Prisons ("BOP") inmate registration number 08561-041, an inmate at the Federal Correctional Institution in Memphis, Tennessee ("FCI-Memphis"), filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on July 25, 2005, accompanied by a memorandum of law. The Court issued an order on October 5, 2005 directing the petitioner, within thirty days, to submit an <u>in forma pauperis</u> affidavit or remit the habeas filing fee. Hardy paid the habeas filing fee on October 14, 2005. The Clerk shall record the respondents as FCI-Memphis warden Bruce Pearson and the Attorney General of the State of Wisconsin.[1]

---

[1] Although the petition purports to name as the second respondent "State of Wisconsin ex rel. Circuit Court Judge, Emmanuel Vuvunas," the judge who presided over the petitioner's Wisconsin criminal case or cases is not the
(continued...)

Although the petition sets forth little information concerning Hardy's federal sentence, a search of PACER indicates that he was indicted in the District of Minnesota on October 7, 1998 on charges of possession of cocaine base with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), and conspiring to distribute crack cocaine, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2. A jury trial commenced on May 3, 1999, and the jury returned a guilty verdict on both counts of the indictment on May 5, 1999. District Judge John R. Tunheim conducted a sentencing hearing on November 16, 1999, at which time Hardy was sentenced to concurrent terms of two hundred forty (240) months imprisonment on each count, to be followed by ten years of supervised release. Judgment was entered on December 3, 1999. <u>United States v. Hardy</u>, No. 0:98-cr-00275-JRT-JGL-1 (D. Minn.). The United States Court of Appeals for the Eighth Circuit affirmed. <u>United States v. Hardy</u>, 224 F.3d 752 (8th Cir. 2000).[2] According to the BOP website, Hardy's projected release date is April 13, 2016.

In his petition, Hardy alleges that he was arrested in Wisconsin in 1991 on a charge of distributing a controlled

---

[1] (...continued) appropriate respondent for a case challenging a Wisconsin detainer, as the judge is not "the person having custody of the person detained," 28 U.S.C. § 2243, with respect to the Wisconsin detainer. <u>Cf.</u> Rule 2(b), Rules Governing Section 2254 Cases in the United States District Courts ("If the petitioner is not yet in custody—but may be subject to future custody—under the state-court judgment being contested, the petition must name as respondents both the officer who has current custody and the attorney general of the state where the judgment was entered."). The Clerk is ORDERED to correct the docket to remove Wisconsin Circuit Court Judge Emmanuel Vuvunas as a party to this action.

[2] Hardy subsequently filed a motion pursuant to 28 U.S.C. § 2255 on April 11, 2001, which was denied on July 29, 2002. <u>Hardy v. United States</u>, No. 0:01-cv-00634-JRT (D. Minn.).

substance. He entered a guilty plea and he was sentenced in May, 1992 to a suspended term of imprisonment and seven years probation. In September, 1993, Hardy was arrested in Wisconsin and charged with drug possession. He entered a guilty plea and was sentenced to four and one-half (4½) years imprisonment.

In December, 1998, after Hardy's arrest on the drug charges for which he is currently imprisoned, the Wisconsin Department of Corrections ("WDOC") lodged a violation warrant against him, presumably because his arrest violated the terms of his probation. The detainer, which is in the form of a letter, dated May 21, 2002, from the WDOC, requests that Hardy be transferred to the custody of the State of Wisconsin at the conclusion of his federal sentence. Hardy contends that "this detainer warrant for violating his probation was not served or lodged against him, until four-years [sic] later, which was 2002." Petitioner's Initial Memorandum of Law in Support of Petition for Writ of Habeas Corpus, filed July 25, 2005 ("P. Br."), at 1. Hardy further contends that, as a result of the detainer, he has been subject to certain restrictions. He is not eligible to participate in low-security programs available throughout the BOP system, to transfer to other BOP institutions,[3] or to be assigned to a halfway house or to work release, camp programs, drug programs, and rehabilitation programs. In this petition, Hardy seeks to have the Wisconsin detainer lifted.

---

[3]   It is not clear what the petitioner means by this, as the May 21, 2002 letter from the WDOC was mailed to the Federal Correctional Institution in Oxford, Mississippi.

Habeas corpus is available to a federal prisoner when "the issues raised more accurately challenged the execution of the sentence than its imposition." Wright v. United States Bd. of Parole, 557 F.2d 74, 78 (6th Cir. 1977); cf. United States v. Jalili, 925 F.2d 889, 893 (6th Cir. 1991) ("Because defendant Jalili is challenging the manner in which the sentence is executed, rather than the validity of the sentence itself, Section 2255 does not apply."). In this case, it does not appear that Hardy is challenging the execution of his federal sentence. He apparently does not take issue with the BOP's calculation of his release date or the fact that, as a result of the detainer, he is ineligible to participate in a variety of programs. Instead, he complains that the Wisconsin state-court judge has not responded to his letters requesting that the detainer be lifted. Thus, the BOP is unable to grant relief.[4] Because a federal court sitting in Tennessee is not the appropriate venue for any challenge to the execution of Hardy's Wisconsin sentence, the petition must be denied for lack of jurisdiction.

Even if there were not a jurisdictional bar to granting relief on the Wisconsin detainer, the petition does not establish

---

[4] Moreover, to the extent Hardy is challenging the execution of his federal sentence, he must exhaust his administrative remedies through the BOP before filing a habeas petition. A prisoner who wishes to appeal a decision by the BOP must seek administrative review of the computation or denial of credits, C.F.R. §§ 542.10-542.16 (1997), and, when he has exhausted all administrative remedies, he may then seek judicial relief pursuant to 28 U.S.C. § 2241. See United States v. Wilson, 503 U.S. 329, 355 (1992); McClain v. Bureau of Prisons, 9 F.3d 503, 505 (6th Cir. 1993); United States v. Dowling, 962 F.2d 390, 393 (5th Cir. 1992). It is undisputed that Hardy has not exhausted his administrative remedies with respect to this claim.

that Hardy is entitled to relief. In Morrissey v. Brewer, 408 U.S. 471, 485 (1972), the Supreme Court held that the minimal due process protections guaranteed in connection with the revocation of parole include a preliminary hearing "at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available." Likewise, the Supreme Court held that a parolee is entitled to a revocation hearing and that such a hearing "must be tendered within a reasonable time after the parolee is taken into custody." Id. at 488. The Supreme Court explained, however, that "[w]e have no thought to create an inflexible structure for parole revocation procedures. . . . Obviously, a parolee cannot relitigate issues determined against him in other forums, as in the situation presented when the revocation is based on conviction of another crime." Id. at 490.[5]

The Supreme Court's subsequent decision in Moody v. Daggett, 429 U.S. 78 (1976), clarifies the time during which a parole revocation hearing must be held when a petitioner is serving time for crimes committed while on parole. In Moody, as in this case, a parole violation warrant was lodged with the petitioner's prison as a detainer,[6] but he was not afforded a revocation hearing

---

[5]  Although Hardy was on probation rather than parole, the requirements of Morrissey have been made applicable to probationers. Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973).

[6]  As the Supreme Court explained, "[a] detainer in this context is an internal administrative mechanism to assure that an inmate subject to an unexpired term of confinement will not be released from custody until the jurisdiction asserting a parole violation has had an opportunity to act in this
(continued...)

and the United States Board of Parole took the position that it intended to execute the warrant only upon the petitioner's release from his second sentence. Id. at 80-81. The Supreme Court held that "there is no requirement for an immediate hearing." Id. at 86; see also id. at 89 ("[W]ithout regard to what process may be due petitioner before his parole may be finally revoked, we hold that he has been deprived of no constitutionally protected rights simply by issuance of a parole violator warrant. The Commission therefore has no constitutional duty to provide petitioner an adversary parole hearing until he is taken into custody as a parole violator by execution of the warrant."). Instead, the hearing requirement set forth in Morrissey is triggered only when the prisoner is taken on the parole violation warrant:

> Petitioner's present confinement and consequent liberty loss derive not in any sense from the outstanding parole violator warrant, but from his two 1971 homicide convictions [stemming from a time when he was released on parole]. Issuance of the warrant and notice of that fact to the institution of confinement did no more than express the Board's intent to defer consideration of parole revocation to a later time. Though the gravity of petitioner's subsequent crimes places him under a cloud, issuance of the warrant was not a determination that petitioner's parole under his 1962 rape conviction will be revoked; the time at which the Commission will make that decision has not yet arrived. With only a prospect of future incarceration which is far from certain, we cannot say that the parole violator warrant has any present or inevitable effect upon the liberty interests which Morrissey sought to protect. Indeed, in holding that "[t]he revocation hearing must be tendered within a reasonable time after the parolee is taken into custody," . . . we established execution of the warrant and custody under that warrant as the operative event triggering any

---

[6] (...continued)
case by taking the inmate into custody or by making a parole revocation determination." Id. at 80 n.2.

> loss of liberty attendant upon parole revocation. This is a functional designation, for the loss of liberty as a parole violator does not occur until the parolee is taken into custody under the warrant.

429 U.S. at 86-87 (citation omitted). In so holding, the Moody Court considered, and rejected, the adverse effects cited by Hardy as attendant on the detainer. Id. at 87-88 & n.9.[7]

In this case, the basis for Hardy's detainer is the crimes he committed in the State of Minnesota. Hardy's conviction of those crimes "provides irrefutable evidence of a parole violation." Santiago-Fraticelli v. Thoms, No. 99-6178, 2000 WL 924602, at *1 (6th Cir. June 26, 2000). Under these circumstances, Hardy is unlikely to suffer any legally cognizable prejudice due to any delay in executing the probation violation warrant.

As Hardy is not entitled to invoke § 2241, "it appears from the application that the applicant or person detained is not entitled" to any relief. 28 U.S.C. § 2243. An order for the respondent to show cause need not issue. The petition is DISMISSED.

Appeals of habeas petitions under 28 U.S.C. § 2254 and motions under 28 U.S.C. § 2255 are governed by 28 U.S.C. § 2253 and require the district court to consider whether to issue a certificate of appealability. Stanford v. Parker, 266 F.3d 342 (6th Cir. 2001); Lyons v. Ohio Adult Parole Auth., 105 F.3d 1063 (6th Cir. 1997). Section 2253 does not apply to habeas petitions by federal prisoners under § 2241. McIntosh v. United States Parole Comm'n, 115 F.3d 809, 810 (10th Cir. 1997); Ojo v. Immigration &

---

[7] See also Santiago-Fraticelli v. Thoms, No. 99-6178, 2000 WL 924602 (6th Cir. June 26, 2000); Bennett v. Bogan, 66 F.3d 812, 818-19 (6th Cir. 1995).

Naturalization Serv., 106 F.3d 680, 681-82 (5th Cir. 1997); Bradshaw v. Story, 86 F.3d 164, 166 (10th Cir. 1996). Nevertheless, a habeas petitioner seeking to appeal is still obligated to pay the $255 filing fee required by 28 U.S.C. §§ 1913 and 1917. Under the Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. § 1915, it is unclear how habeas petitioners establish a right to proceed in forma pauperis and avoid this filing fee.

Although the Sixth Circuit has concluded that the various filing fee payment requirements and good faith certifications of amended § 1915 do not apply to § 2254 cases, it has not resolved whether those requirements apply to § 2241 cases. Kincade v. Sparkman, 117 F.3d 949, 951-52 (6th Cir. 1997); cf. McGore v. Wrigglesworth, 114 F.3d 601 (6th Cir. 1997) (instructing courts regarding proper PLRA procedures in prisoner civil-rights cases, without mentioning § 2241 petitions).

The Tenth Circuit, however, has held that the provisions of the PLRA do not apply to habeas cases of any sort or to § 2255 motions. See McIntosh, 115 F.3d at 810; United States v. Simmonds, 111 F.3d 737, 743 (10th Cir. 1997). An unpublished Sixth Circuit opinion has adopted this approach in affirming a decision from this district. Graham v. United States Parole Comm'n, No. 96-6725, 1997 WL 778515 (6th Cir. Dec. 8, 1997), aff'g Graham v. United States, No. 96-3251-Tu (W.D. Tenn. Dec. 4, 1996). Because the Court finds the reasoning of McIntosh persuasive, and because the Court finds that this conclusion naturally follows from the Sixth Circuit's decision in Kincade, the Court concludes that the PLRA does not

8

apply to § 2241 petitions. Cf. Greene v. Tennessee Dep't of Corrections, 265 F.3d 369 (6th Cir. 2001) (certificate of appealability requirement is applicable to state prisoner bringing § 2241 petition).

The Sixth Circuit has held that the PLRA, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying habeas petitions. Kincade, 117 F.3d at 951. Rather, to appeal in forma pauperis in a habeas case, and thereby avoid the $255 appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). Kincade, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the prisoner must file his motion to proceed in forma pauperis in the appellate court. See Fed. R. App. P. 24(a)(4)-(5).

In this case, for the same reasons the Court has denied the petition, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter is not taken in good faith, and leave to appeal in forma pauperis is DENIED. Accordingly, if petitioner files a notice of appeal, he must also pay the full $255 appellate filing fee or file a motion to proceed

in forma pauperis and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days.

IT IS SO ORDERED this 17th day of January, 2006.

                                                /s/ Jon P. McCalla
                                                JON PHIPPS McCALLA
                                                UNITED STATES DISTRICT JUDGE